## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

Danny Williams,

      Plaintiff,

v.

Warden Pat Hurley, *et al.*,

      Defendants.

Case No.  2:05cv1022

Judge Michael H. Watson

## OPINION AND ORDER

Before the Court is the September 27, 2006 Report and Recommendation (hereinafter "Report") of Magistrate Judge Abel (Doc. 30).  Plaintiff Danny Williams (hereinafter "Plaintiff") filed Objections to the Report on October 13, 2006 (Doc. 36) and on November 6, 2006 (Doc. 39).

These matter are ripe for review.  For the reasons stated herein, the Court **GRANTS** Plaintiff's Objection and **ADOPTS IN PART** and **REJECTS IN PART** the Report.  Accordingly, the  March 23, 2006 Motion of Defendants, Pat Hurley, Terry Harris, Carol Upchurch, James Coulter, D.O. (hereinafter "Dr. Coulter"), and Brenda Jewell (hereinafter collectively "Defendants") to Dismiss (Doc. 12) is hereby **DENIED**, and the August 2, 2006 Motion of Defendants to Dismiss Amended Complaint (Doc. 27) is hereby **DENIED**.

### I.    FACTS

Plaintiff, an inmate at Ross County Correctional Institute (hereinafter "RCI"), asserts a prisoner civil rights action, pursuant to 42 U.S.C. § 1983, claiming he was subjected to cruel and unusual punishment in violation of the Eighth Amendment.

On November 14, 2005, Plaintiff filed his original Complaint alleging Defendants were deliberately indifferent with regard to his medical treatment for lung cancer. (Doc.1) Subsequently, Plaintiff filed an Amended Complaint alleging Dr. Coulter knew, as a result of an x-ray in 2002, Plaintiff had a large mass, which was eventually diagnosed in 2004 as lung cancer. (Doc. 24) He alleges Dr. Coulter "had to have t[old] his superior" about the mass and that all of the Defendants knew about the mass but "ignored" it because the treatment would have cost RCI and Department of Rehabilitation and Corrections (hereinafter "DRC") "almost a million dollars." Plaintiff claims that had the cancer been treated in 2002 it could have been surgically removed and he would have been cured. He also alleges that the Defendants "ignored all that [he] did in the grievance system."

## II.    REPORT

The Report recommends granting Defendant's March 23 and August 2, 2006 Motions to Dismiss (Docs 12 and 27, respectively) and dismissing Plaintiff's Complaint and Amended Complaint. Defendants assert dismissal is appropriate as Plaintiff failed to exhaust the prison administrative grievance procedure prior to filing this action as required by 42 U.S.C. §1997e(a). (Doc. 12) Further, Defendants argue Plaintiff's claim should be dismissed because he did not exhaust all administrative remedies with respect to each individual he named in his Complaint. (Doc. 12, Doc. 27)

The Report finds that Plaintiff pleads facts sufficient to state a claim of cruel and unusual punishment in violation of the Eighth Amendment. However, the Report

2:05cv1022

2

recommends dismissal because Plaintiff failed to exhaust his prison administrative

remedies.[1]

---

[1] Plaintiff claims that he utilized the grievance procedure with respect to the claim alleged in his Complaint. He listed these steps in his Complaint and Amended Complaint. The Magistrate's Report notes the documentation that Plaintiff submitted "to support his assertion that he has exhausted all of his administrative remedies":

- A September 19, 2004 Informal complaint of deliberately indifferent medical treatment by the medical staff and specifically Defendant Jewell occurring on September 19, 2004. However, he goes on to state that he never actually received any treatment at all. He states that when he experienced difficulty in breathing, two unnamed guards were rude to him and instead of walking him to the infirmary, stripped him of his clothes, searched him, and put him in isolation.
- On this same form as above is an answer stating that the complaint was against the officers, and not the medical staff, and so it was referred to the correct department.
- An October 24, 2004 Notification of Grievance complaining of unspecified deliberately indifferent medical treatment from Defendant Jewell, two other unnamed nurses, an unnamed officer, and two unnamed C.O.'s. He explains that these unnamed persons had turned around their badges and this is why he was unable to provide names. He also complained about not receiving the results of a foot x-ray and cat scan.
- A November 15, 2004 Disposition of Grievance stated that Williams was contacted on October 27, 2004 about the cat scan and that medical staff discussed the results with him, educated him on his condition, and met with him again on November 1, 2004 to educate him on his condition and give him pain medication. It further stated that on November 8, 2004 the results of the foot x-ray were discussed with Williams and that he was issued an order for special shoes.
- On the same form as above, Williams wrote that he had a collapsed lung and cancer but that IHS didn't tell him. He also writes that Defendant Coulter knew as far back as 2002 about these conditions but did not tell him or get him treatment. In his amended complaint, Williams claims that he used this form as an appeals form because a prison official refused to give him the correct form.
- A November 24, 2004 Disposition of Grievance, presumably in reference to Williams's comments on the November 15 form, states that his complaints are substantially similar to those already resolved and thus no additional action is required.
- A March 18, 2005 Notification of Grievance complaining of indifferent medical treatment, and explaining that he filed an appeal on the wrong form.

The Report recommends dismissal on the basis that Plaintiff did not exhaust his administrative remedies for all claims and all defendants.   First, the Report notes that "[n]one of the grievances submitted to the Court name Defendants Upchurch, Harris or Hurley." Also, the informal complaint naming Defendant Jewell does "not contain a grievance about *her* conduct but only describes a grievance against two unnamed guards." Furthermore, Defendant Jewell was not named on the November 15, 2004 Disposition of Grievance form.

Additionally, the Report observes Dr. Coulter was not named in the informal or formal grievance.  It notes Plaintiff claims he attempted to file such documentation, but that it was lost or "intentionally not filed by a DRC employee." Williams did not provide a description of the documentation, and thus, the Report concludes Plaintiff did not demonstrate he exhausted his administrative remedies.

## III.    OBJECTIONS

Plaintiff objects to the Report arguing special circumstances prevented him from exhausting the administrative requirements.  Specifically, Plaintiff asserts at the time he was attempting to exhaust his state remedies, he was a prisoner and a patient suffering from lung cancer, who was, and still is, taking pain medication and undergoing chemotherapy.  Furthermore, Plaintiff argues he was, and is still, frequently transported and transferred between prisons, the Correctional Medical Center and hospital(s) while attempting to exhaust his state remedies.

Plaintiff also contends that 42 U.S.C. § 1997e(a) does not apply to his case because the administrative remedies were and are not available to him. He claims

availability is theoretical because he is a patient and a prisoner.  He alleges he did, in

fact, exhaust the remedies which were actually available to him.

## IV.    ANALYSIS

When objections are received to a magistrate judge's report and

recommendation on a dispositive matter, the assigned district judge "shall make a de

novo determination...of any portion of the magistrate judge's disposition to which

specific written objection has been made...." Fed. R. Civ. P. 72(b).  After review, the

district judge "may accept, reject or modify the recommended decision, receive further

evidence, or recommit the matter to the magistrate judge with instructions." *Id; see also*

28 U.S.C. 636(b)(1)(B).  General objections are insufficient to preserve any issues for

review; "[a] general objection to the entirety of the magistrate's report has the same

effects as would a failure to object." *Howard v. Secretary of Health and Human*

*Services,* 932 F.2d 505, 509 (6th Cir. 1991).

For purposes of Plaintiff's objections, the Court shall assume Plaintiff did not fully

comply with the grievance procedure.  Nonetheless, the Court concludes his Complaint

should not be dismissed for failure to exhaust Prison Litigation Reform Act -compliant

grievances.

### A.    *Prison Litigation Reform Act*

The Prison Litigation Reform Act (hereinafter "PLRA") prohibits inmates from

challenging prison conditions in federal courts until they have exhausted their available

administrative remedies. 42 U.S.C. § 1997e(a).   Exhaustion by prisoners is mandatory

under the PLRA.  *Thomas v. Woolum*, 337 F.3d 720, 725 (6th Cir. 2003) (citations

omitted) overruled in part by *Woodford v. Ngo*, 126 S. Ct. 2378 (U.S. 2006).  "[A]

prisoner must now exhaust administrative remedies even where the relief

sought—monetary damages—cannot be granted by the administrative process."

*Woodford*, 126 S. Ct. at 2383 (citations omitted).

The exhaustion requirement anticipates the grievance system will provide the

"most efficient mechanism to remedy a violation of federal law." *Thomas*, 337 F.3d at

726 (citation omitted); *see also Jacobs v. Smith*, 2007 U.S. Dist. LEXIS 1158 at *9 (D.

Ill. 2007) (stating that "[a] major purpose of the exhaustion requirement is to give prison

administrators prompt notice of problems, so that they may be corrected internally in

the first instance and an administrative record developed prior to suit"). Furthermore,

"exhaustion is a termination requirement, designed to keep federal courts out as long

as the state administrative machinery is working to resolve the problem." *Thomas*, 337

F.2d at 730.

The Ohio Administrative Code sets forth a three-step grievance procedure for

inmates housed in Ohio prisons. *See* O.A.C. 5120:9-31. "There is a specific form

designated by the chief inspector to use for each step." O.A.C. 5120:9-31(J). The first

step involves a filing of an informal complaint within fourteen days of the event giving

rise to the complaint. *See* O.A.C 5120:9-31(J)(1). The second step requires the filing

of the notification of grievance. *See* O.A.C. 5120:9-31(J)(2). The final step consists of

the filing of an appeal of the disposition of grievance. *See* O.A.C. 5120:9-31(J)(3).

1.    Exhaustion of Available Remedies and Special Circumstances

Courts have recognized "the PLRA only requires exhaustion of *available*

remedies." *Pack v. Martin*, 174 Fed. Appx. 256, 262, 2006 U.S. App. LEXIS 7521 (6th

Cir. 2006). Plaintiffs are not required to use remedies not "reasonably available." *Id.*

(citations omitted); *see also Hemphill v. New York*, 380 F.3d 680 (2d Cir. 2004); *Days v. Johnson*, 322 F.3d 863, 867 (5th Cir. 2003) (holding that "administrative remedies are deemed unavailable when (1) an inmate's untimely filing of a grievance is because of a physical injury and (2) the grievance system rejects the inmate's subsequent attempt to exhaust his remedies based on the untimely filing of the grievance."). *Hemphill* pointed out that remedies may be unavailable at some level when a prisoner is threatened to not utilize administrative remedies. *Hemphill*, 380 F.3d at 688.

The Sixth Circuit has found that a prisoner who argued exhaustion was futile because his counselor did not give him a grievance form failed to demonstrate he had exhausted his administrative remedies. *See Jones v. Smith*, 266 F.3d 399, 400 (6th Cir. 2001). In contrast, another court noted that "[i]f prison employees refuse to provide inmates with [grievance] forms when requested, it is difficult to understand how the inmate has any available remedies." *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004).

Additionally, administrative remedies may be unavailable where a prisoner receives the medical treatment he requests after filing his grievance appeal because there is no possibility of relief remaining available. *See Brady v. Attygala*, 196 F. Supp. 2d 1016 (C.D. Cal. 2002). The prisoner in *Brady* claimed that while incarcerated the "correctional officers allowed another inmate to injure him and that prison doctors were deliberately indifferent to his medical needs in how they treated a laceration under his right eye he suffered during [a] fight with another] inmate." *Id.* at 1017. The prisoner sought, through his grievance, to be seen by an outside eye specialist. *Id.* at 1021.

This occurred during the pendency of the grievance. *Id.* Therefore, the prisoner's appeal was granted because he received the medical treatment he requested. *Id.*

The *Brady* court found there was "little else [the prisoner] could seek or expect from the prison administrative process [because] he had 'won' his appeal and had been granted all the relief he sought in his grievance." *Id.* at 1021. Thus, the court held the prisoner had exhausted his administrative remedies because there was no "possibility of some relief" available. *Id.* at 1022.

Similarly, relief may be unavailable to an inmate who learns, more than fourteen days after the incident, that a doctor knowingly failed to treat his condition. *See Borges v. Piatkowski*, 337 F. Supp. 2d 424 (W.D. N.Y. 2004). In *Borges*, the prisoner alleged that a dentist "acted with deliberate indifference to his serious medical needs when, after reading the consultation report, he knowingly failed to treat the reactive lesion or address his medical needs in a timely fashion." *Id.* at 426.

During the extraction of the prisoner's wisdom tooth by another dentist, a piece of the drill broke off and was left in the prisoner's tooth without the prisoner's knowledge. *Id.* at 425. Thereafter, the prisoner experienced pain near the tooth and reported it to the defendant dentist. *Id.* The defendant dentist examined the prisoner and told him that his wisdom teeth were causing the pain. *Id.* The defendant dentist referred him to a hospital for an evaluation. *Id.* The prisoner continued to complain about the pain but the defendant dentist told him that the problem was his wisdom teeth. *Id.*

Months after the defendant dentist's initial evaluation of the prisoner, the prisoner was seen at the hospital. *Id.* At the hospital, x-rays revealed a foreign object and a

2:05cv1022                                                                            8

reactive lesion in the prisoner's mouth.  *Id.*  No one at the hospital told the prisoner about the foreign object or the reactive lesion.  *Id.*  The defendant dentist reviewed the hospital's report and also did not tell the prisoner.  *Id.*  The prisoner was thereafter transferred to another prison where a dentist performed an x-ray and told the prisoner about the foreign object and the lesion.  *Id.* at 426.  The object was then surgically removed from the prisoner's mouth.  *Id.*

The prisoner never filed a grievance relating to his claims.  *Id.*  He argued that he was not required to exhaust any remedies because such "were not actually 'available' to him because he did not learn of the foreign object and reactive lesion" until the fourteen-day filing period required by the grievance program had passed.  *Id.*  The prisoner claimed he was "unaware of any alleged wrongdoing by [the dentist] before [the filing] date had passed and could not have filed a grievance complaining of [the dentist's] deliberate indifference to his serious medical needs when he did not know of the nature of his alleged wrongdoing." *Id.*  The defendant dentist argued that the prisoner had two months before he left the prison during which to file a grievance against him.  *Id.*

The *Borges* court agreed with the prisoner, stating, "under the circumstances," the prisoner "had no 'available' administrative remedies to exhaust during the last two months" at the prison.  *Id.* at 427.  The court explained:

> By the time he learned that he had a foreign object in his mouth that caused him pain, and that [the defendant dentist] may have known about the true nature of his condition but did nothing to address it, more than fourteen days had elapsed since [the dentist's] allegedly unconstitutional conduct. Thus, there was no further "possibility of some relief" for [the prisoner]. Therefore, [the prisoner] had no available remedy to exhaust, as there was no mechanism in which to

file a grievance about [the defendant dentist's] alleged deliberate indifference to his medical needs.

*Id.* (internal citations omitted).

The court further noted that "even if there were 'available' remedies to [the prisoner], based on the unique facts of [the] case . . . 'special circumstances' exist that justify [the prisoner's] failure to exhaust his remedies . . . . *Id.* at n.3.

Other courts have also noted that "special circumstances" may excuse a prisoner's failure to exhaust administrative remedies. *See Hemphill*, 380 F.3d at 689; *Gibson v. Brooks*, 335 F. Supp. 2d 325, 329 (D. Conn. 2004). In *Brownwell v. Krom*, 446 F.3d 305, 313(2d Cir. 2006), the court found "there to be special circumstances justifying noncompliance with the exhaustion requirements of the PLRA . . . because (1) prison officials erroneously refused to investigate the circumstances of [the prisoner's] lost-property claim and frustrated administrative appellate review of this error and (2) after [the prisoner] subsequently conducted his own investigation into the circumstances surrounding his lost property, he reasonably believed that he could not raise the new facts discovered in administrative proceedings." Having found there were special circumstances, the court next determined whether administrative remedies were still available. *Id.* Since the prisoner attempted to file a new grievance, after the district court dismissed the prisoner's § 1983 complaint, and that grievance was dismissed as untimely, the prisoner no longer had administrative remedies available. *Id.*

2.    Administrative Remedies Were Not Available to Plaintiff and
      Special Circumstances Exist That Excuse Any Failure to Exhaust
      Remedies

In this case, the grievance system is not the most efficient mechanism to remedy

the alleged violation of Plaintiff's civil rights.  The civil rights violation alleged cannot be

corrected or resolved and, thus, administrative remedies are not available to Plaintiff.

Like the prisoner in *Brady*, Plaintiff had "little else he could seek or expect from

the prison administrative process."  First, the cell mass Plaintiff alleges was evident in

the 2002 x-ray manifested into lung cancer.  This manifestation cannot be reversed and

the effects of the Defendants' alleged actions cannot be cured.  Second, Plaintiff finally

received the medical attention he desired when his condition was made known to him

and treated.  The Court is unable to foresee what the prison can do for Plaintiff now.

Furthermore, like in *Borges*, by the time Plaintiff learned about the cancer mass,

and that Dr. Coulter may have known about its true identity, more than 14 days had

elapsed since Dr. Coulter's alleged unconstitutional conduct.   In fact, over two years

passed before Plaintiff's true condition was revealed.   Two years far exceeds the

fourteen-day filing period wherein Plaintiff was required to submit an informal complaint

after the alleged occurrence.  As Plaintiff was unaware of the Defendants' actions, he

was unable to file an informal complaint within that time period.  Thus, Plaintiff had no

available remedy to exhaust and there was no further possibility of some relief for

Plaintiff.

Even if remedies were available to Plaintiff, special circumstances exist which

justify his failure to exhaust administrative remedies.  These circumstances include the

nature of his illness, the number of years which passed since the Defendants' alleged

malfeasance, the seriousness of the Defendants' alleged actions, and the inability of the prison to provide Plaintiff with any relief pertaining to his Complaint.

### 3.    Failure to Exhaust is an Affirmative Defense

Furthermore, Plaintiff's case may not be dismissed on the basis that he did not demonstrate exhaustion in his Complaint.  "Failure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 127 S. Ct. 910, 921 (2007).

### B.    *Individuals Not Named in the Grievance*

Finally, Plaintiff's claim against certain Defendants should not be dismissed because they were not named in his grievances.

In *Jones*, the Supreme Court considered two cases where the Sixth Circuit dismissed prisoners' claims because they had not identified each defendant they sued in their grievances. *Id.* at 922.  The Supreme Court found that the Sixth Circuit's "procedural rule lacks a textual basis in the PLRA" and held that "exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances." *Id.* at 922-23.  The Supreme Court so held because nothing in the PLRA requires a plaintiff to 'name all defendants' in his grievances. *Id.* at 922.

The Supreme Court also stated if a prison's procedures require the naming of particular officials in grievances, a rule imposing such a prerequisite to proper exhaustion may be warranted. *Id.* at 923.  In *Jones*, the prison policy "did not contain any provision specifying who must be named in a grievance." *Id.* at 922.  Instead, the "policy required only that prisoners 'be as specific as possible' in their grievances." *Id.*  Additionally, the grievance policy provided prisoners with the opportunity to later explain

their grievance. *Id.* Thus, the Court concluded that "[n]othing in the . . . policy itself supports the conclusion that the grievance process was improperly invoked simply because an individual later named as a defendant was not named at the first step of the grievance process." *Id.*

Here, the Defendants have not argued that the prison policy at issue requires the naming of particular officials in grievances. Furthermore, the inmate grievance procedure outlined in the Ohio Administrative Code does not specify who must be named in the grievance. *See* O.A.C. 5120:9-31. Thus, exhaustion is not inadequate because the Defendants were not named in the grievances.

### C. Plaintiff's Eighth Amendment Claim

The Court agrees with the Report's finding that "Williams has pled facts sufficient to state a claim of deliberate indifference under the Eighth Amendment." (Doc. 30.)

First, Williams alleges all the Defendants were involved, either by direct action, authorization, or acquiescence, in the violation of his civil rights as required for a § 1983 claim against an official. Specifically, he alleges that all the Defendants knew about his cancer and decided to keep it hidden from him and to refuse him treatment. (Doc. 24.) He therefore meets the "minimum" requirement of showing "that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Hays v. Jefferson County, Ky*, 668 F.2d 869, 874 (6th Cir. 1982).

Second, Plaintiff alleges facts that, if proven, "would rise to the level of the serious deprivation and deliberate indifference required to support an Eighth

Amendment claim." *See Mack v. Wilkinson*, 79 Fed. Appx. 137, 139, 2006 U.S. App. LEXIS 7521 (6th Cir. 2003).

A prisoner demonstrates an Eighth Amendment violation when he shows that a prison official acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976). "Deliberate indifference is the reckless disregard of a substantial risk of serious harm; mere negligence will not suffice." *Mack*, 79 Fed. Appx. at 139 (citations omitted). To allege a claim for deliberate indifference, the Plaintiff must allege facts that show "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Here, Plaintiff alleges the Defendants were aware he had lung cancer and disregarded it. (Doc. 27.) Lung cancer is an objectively life-threatening illness and untreated constitutes an excessive risk to an individual's health. Plaintiff's allegations that the Defendants deliberately chose not to treat his cancer draws the inference that the Defendants were aware that a substantial risk of serious harm existed. Therefore, Plaintiff has pled facts sufficient to state a claim of deliberate indifference under the Eighth Amendment.

## V.    CONCLUSION

For the foregoing reasons, the October 13, 2006 and November 6, 2006 Objections to the Report (Docs. 36 and 39, respectively) are hereby **GRANTED;** the Court **ADOPTS IN PART** and **REJECTS IN PART** the September 27, 2006 Report and Recommendation (Doc. 30); the March 23, 2006 Motion of Defendants to Dismiss (Doc.

12) is hereby **DENIED**, and the August 2, 2006 Motion of Defendants to Dismiss

Amended Complaint (Doc. 27) is hereby **DENIED**.

      **IT IS SO ORDERED.**

 

Michael H. Watson, Judge
United States District Court